UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARA SANDLER, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MODERNIZING MEDICINE, INC., a Delaware Corporation,<br><br>　　　　　　　　　　　Defendant. | Case No.: 24-cv-00812-AJB-BJC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY ACTION PENDING ARBITRATION**<br><br>**(Doc. No. 11)** |

Presently before the Court is Defendant Modernizing Medicine, Inc.'s ("ModMed") motion to compel arbitration and to stay action pending arbitration in Plaintiff Kara Sandler's civil action for alleged employment violations. (Doc. No. 11.) The motion has been fully briefed, (Doc. Nos. 13, 14), and the matter is suitable for determination on the papers. Accordingly, the Court **VACATES** the hearing set for Thursday, October 31, 2024, at 2:00 p.m. For the reasons stated herein, the Court **DENIES** Defendant's motion.

I. **BACKGROUND**

This case concerns Plaintiff's allegations of discriminatory treatment and wrongful termination at her employment. Specifically, Plaintiff brings claims against ModMed for: (1) age discrimination in violation of Cal. Gov't Code § 12940(a), (2) disability discrimination in violation of Cal. Gov't Code § 12940(a), (3) failure to provide reasonable

1

accommodations in violation of Cal. Gov't Code § 12940(m), (4) failure to engage in the interactive process in violation of Cal. Gov't Code § 12940(n), (5) California Family Rights Act retaliation in violation of Cal. Gov't Code § 12945.2(k), (6) Family and Medical Leave Act interference in violation of 29 U.S.C. § 2615(a), (7) retaliation for requesting reasonable accommodations in violation of Cal. Gov't Code § 12940(m)(2), and (8) failure to prevent discrimination and retaliation in violation of Cal. Gov't Code § 12940(k).

Plaintiff was previously employed by gMed, Inc. ("gMed") beginning in late 2013. (Complaint, Doc. No. 1, ¶ 12.) In 2015, ModMed acquired gMed. (*Id.* ¶ 14.) On September 2, 2015, ModMed made an offer of employment to Plaintiff via an Offer Letter, with employment to commence on October 1, 2015. (Doc. No. 11-1 at 9; Doc. No. 11-2 at 4–7.) The Offer Letter referenced the "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement—California" (the "Employment Agreement"), which contains the Arbitration Provision at issue here. (Doc. No. 11-2 at 6.)

On September 8, 2015, Plaintiff accepted ModMed's offer of employment and agreed to the Employment Agreement (including the Arbitration Provision). (Employment Agreement, Doc. No. 11-2, 9–23.) The Employment Agreement stated Plaintiff understood and agreed that "all employment-related disputes . . . shall be subject to binding arbitration under the Federal Arbitration Act in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. Sec. 1280 et seq.)[.]" (*Id.* § 13.A.) Specifically, Plaintiff agreed to arbitrate all disputes "arising out of, relating to, or resulting from [her] employment with the company or the termination of [her] employment with the company, including any breach of [the Employment Agreement]," including "any statutory claims under local, state, or federal law, including, but not limited to," claims under "the California Fair Employment and Housing Act, the Family and Medical Leave Act, the California Family Rights Act, the California Labor Code, claims of harassment, discrimination, and wrongful termination, and any statutory or common law claims." (*Id.*) Further, Plaintiff agreed to waive her right to any trial in any federal or state court in favor of arbitration for covered claims. (*Id.* § 13.A, E.) She also agreed the arbitration would be administered by

Judicial Arbitration & Mediation Services, Inc. ("JAMS") under its Employment Arbitration Rules and Procedures, and that arbitration would be the "sole, exclusive, and final remedy for any dispute between [Plaintiff] and the company." (*Id.* § 13.B.)

Plaintiff filed her Complaint against ModMed on May 8, 2024. (*See* Compl.) ModMed now moves the Court to compel arbitration. (Doc. No. 11.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). The Supreme Court has enunciated a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, the court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *Tracer Rsch. Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted).

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. District courts apply state law principles of contract formation and interpretation in determining

which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

## III.   REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 states a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, ModMed requests judicial notice of the JAMS Employment Arbitration Rules & Procedures. (Doc. No. 11-4 at 1–2.)

Judicial notice of the JAMS Employment Arbitration Rules & Procedures is proper because the contents of the rules are not reasonably subject to dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Chavarria v. Ralphs Grocery Co.*, 812 F. Supp. 2d 1079, 1087 n.8 (C.D. Cal. 2011). Accordingly, the Court **GRANTS** ModMed's request for judicial notice.

## IV.   DISCUSSION

Plaintiff concedes she received and signed the Employment Agreement containing the Arbitration Provision, the Arbitration Provision is governed by the FAA, and her claims in this case fall within the scope of the Arbitration Provision. (Doc. No. 13 at 10–11, 14.) However, Plaintiff disputes the enforceability of the Arbitration Provision as procedurally and substantively unconscionable, which she asserts must be decided by the Court because

the Parties did not "clearly and unmistakably" delegate issues of arbitrability to an arbitrator. (*Id.* at 14.)

## A. Delegation of Arbitrability

Under federal law, gateway questions of arbitrability can be "delegated to the arbitrator where 'the parties *clearly and unmistakably*'" so agree. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

### 1. JAMS Rules

ModMed argues the Parties delegated arbitrability issues to the arbitrator by incorporating the JAMS Employment and Arbitration Rules and Procedures ("JAMS Rules") into the Employment Agreement. (Doc. No. 11-1 at 18.) ModMed point out that here, the Arbitration Provision states that "any arbitration will be administered" by JAMS pursuant to the JAMS Rules. (Doc. No. 11-1 at 18 (citing Employment Agreement § 13.B).) And, as ModMed notes, JAMS Rule 11 provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(JAMS Rules, Doc. No. 11-4, at 10.)

Notably, the Ninth Circuit held in *Brennan* that the "incorporation of the AAA [American Arbitration Association] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," where one of the AAA rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." 796 F.3d at 1130. Similar circumstances exist here—the parties' arbitration agreement incorporates the JAMS Rules. *See Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 Fed. App'x 740, 742 (9th Cir. 2012) ("By incorporating the JAMS rules, the parties demonstrated their clear and

unmistakable intent to have an arbitrator resolve the issue of arbitrability."). *Brennan* is thus controlling. As such, the Court finds the incorporation of the JAMS Rules in the Arbitration Provision here constitutes "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability.

### 2. Sophistication of Parties

In an attempt to distinguish *Brennan*, Plaintiff argues she is not a sophisticated party. (Doc. No. 13 at 16.) However, the *Brennan* court expressly stated its holding "does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Brennan*, 796 F.3d at 1130. Indeed, the court went out of its way to explain: "Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.* Thus, the Court rejects Plaintiff's lack of sophistication argument.

### 3. Severability Clause

Finally, Plaintiff asserts ModMed's severability clause negates any "clear and unmistakable" delegation of arbitrability. (Doc. No. 13 at 17–18.) Section 14.E of the Arbitration Provision states:

> If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

(Employment Agreement § 14.E.)

California precedent declares, "[w]here . . . a contract includes a severability clause stating a court of competent jurisdiction may excise an unconscionable provision, there is no clear and unmistakable delegation to the arbitrator to decide if the arbitration agreement is unconscionable." *Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204, 209–10 (2020); *see Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 891, 893–94 (2008) (arbitration

agreement did not clearly provide issues of enforceability were to be decided by the arbitrator due to severability provision that "'any provision of this arbitration agreement shall be determined by the arbitrator or by any court to be unenforceable . . . .'").

ModMed asserts in reply that when the severability provision stated "a court or **other body of competent jurisdiction**" may render a provision unenforceable, it intended for the arbitrator to decide the issue, not a court of law. (Doc. No. 14 at 3.) ModMed further argues the "court" was retained in the severability provision because it reserved the right to bring disputes over breaches of confidentiality and solicitation in court. (*Id.*) However, ModMed's intentions were not written into the Arbitration Provision.

This Agreement lacks the "clear and unmistakable evidence" required to override the presumption of judicial review of gateway arbitrability. *See Dennison*, 47 Cal. App. 5th at 209–10. This Court must therefore decide the arbitrability of the Agreement.

**B.     Enforceability of the Arbitration Agreement**

Plaintiff does not address whether a valid agreement to arbitrate exists or whether the agreement encompasses the dispute at issue. (*See generally* Doc. No. 13.) Rather, she asserts the Employment Agreement is procedurally and substantively unconscionable. (*Id.* at 17.)

Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility*, 563 U.S. at 339. For a court to exercise its discretion not to enforce a contract clause under the doctrine of unconscionability, "[p]rocedural and substantive unconscionability must both be present" but "they need not be present in the same degree" and are evaluated on "a sliding scale." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

**1.     Procedural Unconscionability**

A determination of procedural unconscionability is focused on elements of "oppression and surprise." *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 176 (2015). The oppression element "arises from an inequality of bargaining power," while the surprise element "involves the extent to which the terms of the bargain are hidden." *Id.*

### a. Oppression

"Oppression" generally entails a contract of adhesion. *The McCaffrey Grp., Inc. v. Superior Ct.*, 244 Cal. App. 4th 1330, 1348 (2014). Adhesion contracts are standardized, preprinted forms that are offered by the party with superior bargaining power on a "take-it-or-leave-it basis" and are often indicative of procedural unconscionability. *Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462, 474 (2020). In *Ali*, the court found an imbalance in bargaining power between the plaintiffs, who were independent-contractor truck drivers, and the defendant, who was the employer corporation. *Id.* This imbalance, coupled with the fact that the arbitration agreement was a standardized, preprinted, nonnegotiable form, was sufficient to "demonstrate significant oppression." *Id.*

Here, MedMod is a nationwide medical software company that drafted the Employment Agreement, including the Arbitration Provision, which it offered to Plaintiff, a two-year employee of gMed, on a take-it-or-leave-it basis. (Declaration of Lindsay Wehmeyer, Doc. No. 11-2, ¶¶ 2–3; Doc. No. 13 at 19.) While Plaintiff is an educated account executive, ModMed's sophistication as a corporation significantly overshadows the weaker position of Plaintiff as a worker and demonstrates an imbalance in bargaining power. Moreover, Plaintiff had no opportunity to negotiate the terms of the Employment Agreement; it was presented to her as a standardized, preprinted form.

Moreover, the evidence suggests Plaintiff was given little time to consider the Employment Agreement. According to ModMed's Adobe Acrobat Sign Audit Report, the Offer Letter containing the Employment Agreement was created, sent to, and signed by Plaintiff on September 8, 2014, the same date ModMed "encourage[d]" her to sign the document, warning that "[r]eturning the paperwork after September 8, 2015 may delay your anticipated start date."[1] (Doc. No. 11-2 at 6, 25, 27.) This was during a time when

---

[1] While ModMed asserts "Plaintiff admitted that she received the offer letter, containing a copy of the Employment Agreement, on September 2, 2015[,]" (Doc. No. 14 at 4 (citing Declaration of Kara Sandler ("Sandler Decl."), Doc. No. 13-2, ¶ 7)), Plaintiff in fact stated she "do[es] not recall the date [she] received

Plaintiff would have lost out on significant commissions that were to be paid in 2016 as a result of her previous work. (Declaration of Kara Sandler, Doc. No. 13-2, ¶ 5.) Indeed, courts have found that procedural unconscionability exists in employment contracts which necessitate the employees to forgo any bonuses they would have been eligible for otherwise. *See Aguilar v. Zep Inc.*, No. C 13-0563 RS, 2013 WL 12173914, at *4 (N.D. Cal. May 9, 2013) (procedural unconscionability existed due to adhesion because the employer informed employee sales representatives that, although they were not required to sign the arbitration agreement, failing to sign the agreement would forfeit bonus eligibility); *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 992 (S.D. Cal. 1999) (requiring a sales representative to sign an arbitration agreement when she was waiting on payment of a sales commission created unequal economic bargaining power and a lack of meaningful choice).

Accordingly, the Court classifies the Employment Agreement as an adhesion contract based on the imbalance of bargaining power between Plaintiff and ModMed, and the presentation of the Employment Agreement as a standardized, preprinted, nonnegotiable form. *See Ali*, 59 Cal. App. 5th at 474. As a contract of adhesion, the Court finds the Employment Agreement to be oppressive in nature.

### b.  Surprise

Surprise is "a function of the disappointed reasonable expectations of the weaker party." *Higgins v. Superior Ct.*, 140 Cal. App. 4th 1238, 1252 (2006) (citing *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003)); *see OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (holding that a provision that is beyond the reasonable expectations of the weaker party generates surprise). Showing surprise involves the extent to which the disputed terms are hidden in a prolix printed form that was drafted by the party seeking to enforce the disputed terms. *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982).

---

these documents" and merely stated the letter she received was "dated September 2, 2015," (Sandler Decl. ¶¶ 7–8).

Here, while the Arbitration Provision at Article 13 of the Employment Agreement begins halfway through the 15-page, single-spaced document, it appears in bold and capitalized font under its own separate heading. (*See* Employment Agreement § 13.) Plaintiff has not established that the Arbitration Provision involved any surprise.

Plaintiff has demonstrated a low degree of procedural unconscionability based on the Arbitration Provision's adhesive nature and oppression. Thus, Plaintiff must demonstrate a significant degree of substantive unconscionability to succeed on her challenge to the Arbitration Provision.

### 2. Substantive Unconscionability

"The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 287–88 (2016) (internal quotation marks and alterations omitted).

"[T]he paramount consideration in assessing conscionability is mutuality." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Id.* (quoting *Armendariz*, 24 Cal. 4th at 119). "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." *Armendariz*, 24 Cal. 4th at 120. "Courts have found one-sided employer-imposed arbitration provisions unconscionable where they provide that employee claims will be arbitrated, but the employer retains the right to file a lawsuit in court for claims it initiates, or where only the types of claims likely to be brought by employees (wrongful termination, discrimination etc.) are made subject to arbitration." *Serafin*, 235 Cal. App. 4th at 181 (citing cases).

Plaintiff asserts the Employment Agreement is substantively unconscionable because there is a lack of mutuality as to the claims subject to arbitration, the parties subject

to the Arbitration Provision, the jury waiver, and due to the Employment Agreement's indefinite duration. (Doc. No. 13 at 22–28.)

### a. One-Sided Claim Coverage

Plaintiff first argues the Employment Agreement is substantively unconscionable because only she is expressly bound to arbitrate all employment-related claims. (*Id.* at 22, 25.) She highlights the first section of the Arbitration Provision, which states, "I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, stockholder, or benefit plan of the company, in their capacity as such or otherwise) . . . shall be subject to binding arbitration . . . ." (Employment Agreement § 13.A.) Moreover, the Arbitration Provision states the "agreement to arbitrate also applies to any disputes that the Company may have with me, including but not limited to, misuse of confidential information or interference with company business and workforce, unfair competition or matters involving inventions." (*Id.* § 13.A.) The Employment Agreement then specifically exempts, however, claims brought by ModMed "to obtain equitable or injunctive relief such as an application for a temporary/preliminary or permanent injunction for breach of the restrictive covenants contained in this agreement. (*Id.* § 13.C.) Additionally, the Employment Agreement contains carve-outs in which ModMed may seek: "legal action" for the unauthorized use or disclosure of Company Confidential Information; "legal relief including an injunction, declaratory relief, specific performance, and/or substantial damages" for interference with company employees after termination of employment; and "legal proceedings . . . to enforce any covenants or promises . . . to seek all available civil remedies, at law or in equity, including, without limitation, an order of specific performance, an injunction without posting a bond, monetary damages, attorneys' fees, and costs." (*Id.* §§ 2.B, 8, & 12.)

Plaintiff is correct that the Arbitration Provision is unfairly one-sided because it excludes ModMed's potential claims for injunctive, equitable, or declaratory relief,

specific performance, and damages.[2] "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" *Armendariz*, 24 Cal. 4th at 117; *see Mercuro v. Superior Ct.*, 96 Cal. App. 4th 167, 175 (2002) (finding arbitration agreement substantively unconscionable which excluded "claims for injunctive and/or other equitable relief" because it exempted from arbitration the claims most likely brought by the defendant against its employees). Meaning, ModMed can exclude from arbitration its claims for injunctive, declaratory, or other equitable relief, specific performance, and substantial damages for the unauthorized use/disclosure of confidential information, interference with company employees, and to enforce any covenants or promises, only if "business realities" justify this exclusion.

ModMed provides no evidence regarding the "business realities" that justify the one-sided carve-out of ModMed's various claims against employees like Plaintiff. Many courts in similar circumstances have found this type of carve-out to be substantively unconscionable. *See Buchsbaum v. Digit. Intel. Sys., LLC*, No. 20-cv-00706-BAS-AGS, 2020 WL 7059515, at *6 n.5 (S.D. Cal. Dec. 2, 2020) (collecting cases). The Court agrees the exceptions found in Sections 2.B, 8, and 12 of the Employment Agreement are substantively unconscionable.

### b.   Parties Subject to Arbitration

Next, Plaintiff asserts there is a lack of mutuality as to the parties subject to the Arbitration Provision. (Doc. No. 13 at 25.) The Employment Agreement defines the

---

[2] California law "expressly permits parties to an arbitration to seek preliminary injunctive relief during the pendency of the arbitration." Cal. Civ. Proc. Code § 1281.8. Hence, an arbitration agreement is not substantively unconscionable if it parrots this authorization. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1248 (2016). The Employment Agreement's carve-out here is not so limited. It broadly includes claims for injunctive or equitable relief—not just provisional remedies that seek to preserve the status quo during an arbitration.

"Company" as "Modernizing Medicine, Inc., its subsidiaries, affiliates, successors or assigns." (Employment Agreement at 1.) The Arbitration Provision goes on to emphasize "its [the Company's] promise to arbitrate all employment-related disputes" and states, "this agreement to arbitrate also applies to any disputes that the Company may have with me . . . ." (*Id.* § 13.A.) However, the Employment Agreement requires Plaintiff to arbitrate any and all claims she may have against "anyone (including the Company and any employee, officer, director, stockholder, or benefit plan of the Company, in their capacity as such or otherwise)[.]" (*Id.*) ModMed does not address this issue or attempt to justify this one-sidedness. (*See generally* Doc. No. 14.)

The California Court of Appeal recently had a similar issue before it in *Cook v. University of Southern California*, 102 Cal. App. 5th 312 (2024). In *Cook*, the arbitration agreement required Cook to arbitrate any and all claims she may have had against USC or any of its "related entities," but did not require USC's "related entities" to arbitrate their claims against Cook. *Cook*, 102 Cal. App. 5th at 326. As the court stated, "[t]he concern is that the agreement provides benefits to broad swaths of third-party beneficiaries only in favor of USC without any showing of justification for this one-sided treatment. This confers a benefit on USC and its broadly-defined 'related entities' that is not mutually afforded to Cook." *Id.* at 326–27. Thus, the court found the arbitration was substantively unconscionable for lack of mutuality. *Id.* at 328.

The Court finds the Employment Agreement here is similarly one-sided, and without any showing of justification by ModMed, the Arbitration Provision is substantively unconscionable due to lack of mutuality.

### c. Lack of Mutuality As to Jury Waiver

Similarly, Plaintiff argues there is a lack of mutuality as to the jury waiver within the Arbitration Provision because the waiver only applies to Plaintiff. (Doc. No. 13 at 26.) Indeed, the Arbitration Provision states in two separate subsections that the employee waives "any right to a trial by jury" but is silent as to whether this waiver applies to ModMed. (*See* Employment Agreement § 13.A, E.) The Court finds this a one-sided

provision without any showing of justification by ModMed, and as such, the Arbitration Provision is substantively unconscionable due to lack of mutuality.

### d. Duration

Finally, Plaintiff contends the Employment Agreement is unconscionable due to its indefinite duration. (Doc. No. 13 at 27.) ModMed does not address this argument in reply. (*See generally* Doc. No. 14.)

The Employment Agreement states, "[n]o modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the President or CEO of Company and me." (Employment Agreement § 14.F.) It goes on to further state, "[t]he rights and obligations of the parties to this Agreement will survive termination of my employment with the Company." (*Id.* § 14.G.)

In *Cook*, the court found the duration of the arbitration agreement was substantively unconscionable where the "agreement expressly states that it 'shall survive the termination of Employee's employment, and may only be revoked or modified in a written document . . . and is signed by the President of the University.'" *Cook*, 102 Cal. App. 5th at 325. The Court similarly finds the Arbitration Provision is one of indefinite duration, and thus substantively unconscionable.

## C. Severability

ModMed argues that if the Court should find any portion of the Arbitration Provision unconscionable, it should "sever the objectionable provision and enforce the remainder." (Doc. No. 11 at 28.) Plaintiff asserts that because "unconscionability permeates the Employment Agreement[,]" the offending provisions are not severable. (Doc. No. 13 at 30.) The Employment Agreement includes a severability provision, stating that "[if] a court or other body of competent jurisdiction finds . . . any provision of this Agreement, or a portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect." (Employment Agreement § 14.E.)

California Civil Code section 1670.5(a) provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

The California "Supreme Court has interpreted this provision to mean that if a trial court concludes that an arbitration agreement contains unconscionable terms, it then 'must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated.'" *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 452–53 (2020) (quoting *Gentry v. Superior Ct.*, 42 Cal. 4th 443, 473 (2007)). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although 'the statute appears to give a trial court discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability.'" *Id.* at 453 (alterations in original) (quoting *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1478 (2009)).

To determine whether unconscionability permeates an arbitration agreement, courts have considered several factors: (1) whether there are multiple unconscionable provisions; (2) whether the central purpose of the contract is illegal; and (3) whether the court can eliminate the unconscionability from the contract by striking or restricting provisions—instead of rewriting or reforming the agreement. *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272–73 (9th Cir. 2017) (citing cases); *see also Armendariz*, 24 Cal. 4th at 124–25.

The above factors disfavor severing the unconscionable provisions because they permeate the Employment Agreement. As discussed above, multiple provisions of the Employment Agreement are substantively unconscionable. Taken together, the provisions represent an attempt to enforce a one-sided alternative to litigation that favors the employer. There is no single provision's absence that would change this result. Removing

the unconscionability of the Employment Agreement would require either the severance of several provisions or the addition of several terms to mitigate the offending provisions, neither of which are permitted. *Armendariz*, 24 Cal. 4th at 124–25 ("Nor do courts have any such power under their inherent, limited authority to reform contracts.").

Accordingly, the offending provisions of the Employment Agreement are not severable, and the Arbitration Provision is unenforceable.

## V. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion to compel arbitration. (Doc. No. 11.)

**IT IS SO ORDERED.**

Dated: October 9, 2024

Hon. Anthony J. Battaglia
United States District Judge